# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:25-CR-262 |
| | ) | |
| v. | ) | |
| | ) | DEFENDANT'S MOTION TO |
| TIRON LYONS | ) | SUPPRESS EVIDENCE |
| | ) | |
| | ) | |

NOW COMES Defendant TIRON LYONS, by and through undersigned counsel, and hereby moves to suppress all evidence seized as a result of a law enforcement vehicle search on December 30, 2024, within the Western District of North Carolina. As a result of events from the traffic stop, the Defendant was charged in a one-count indictment with "Possession of a Firearm by a Convicted Felon."

## 1. FACTUAL SUMMARY

The Defendant expects the following facts to be established:

On December 30, 2024, law enforcement with the Charlotte Mecklenburg Police Department ("CMPD") was patrolling the area of South Davidson Street, within the Western District of North Carolina. While on patrol CMPD Officer J. Lewis observed a 2014 Ford Escape operating within his patrol area. Based on several prior interactions, Officer Lewis recognized the vehicle and its driver Brionne Smith ("Smith"). Officer Lewis was aware that Smith did not have a valid driver's license at the time she was operating the vehicle. Officer Lewis then pulled his patrol vehicle next to the Ford, confirmed that Smith was the driver of the vehicle, and initiated a traffic stop. At the time of the traffic stop, Tiron Lyons ("Mr. Lyons") was seated in the front passenger seat of the vehicle.

After approaching the vehicle, Officer Lewis asked Smith to step out of the car. Once Smith exited, Officer Lewis noticed a red cup that contained what appeared to be alcohol. Officer Lewis also noticed what appeared to be an empty wine bottle inside the vehicle and noted the odor of marijuana emanating from inside the car. During these initial interactions, Officer Lewis indicated that he was familiar with Smith and her extensive association with the vehicle. Additional CMPD officers that arrived at the scene had Mr. Lyons step out of the car and detained him in handcuffs. CMPD officers then conducted a search of the vehicle and located a small amount of green leafy substance in the floorboard area of the front passenger seat.

At the time that he was removed from the vehicle Mr. Lyons was wearing a sling style bag across his chest. After conducting a search of the vehicle, CMPD officers asked Mr. Lyons for consent to search his person. Mr. Lyons respectfully declined to acquiesce to the officers' request for a search. While conducting the vehicle search and investigation, CMPD officers reviewed video camera stills that appeared to depict a person at the Charlotte Transportation Center Station, holding suspected narcotics. The stills appeared to be from December 29, 2024. CMPD officers believed that the images depicted Mr. Lyons.

It was at this point that CMPD officers appeared to discuss whether they had enough information to warrant a search of Mr. Lyons. During this conversation, officers noted the image stills from the Transit Center, the open container located inside the vehicle, and the green leafy substance or marijuana "dust" located on the floorboards and decided to search Mr. Lyons. During the search of Mr. Lyons, officers located a firearm, 7.62 grams of methamphetamine, and 3.30 grams of cocaine base. The undersigned counsel contends that the search of Mr. Lyons was not supported by the law, and the items recovered should be suppressed.

2

**2. THE SEARCH CONDCUTED BY LAW ENFORCEMENT OFFICERS IN THIS CASE EXCEEDED THE SCOPE OF A REASONABLE SUSPICION TERRY FRISK AND WAS NOT SUPPORTED BY PROBABLE CAUSE**

Law enforcement officers in this case exceeded the permissible scope of a reasonable suspicion search, and evidence recovered as a result of that search should be suppressed. Courts in this Circuit have recognized that when an officer has reasonable suspicion that narcotics are inside of a vehicle, at the time of a traffic stop, he may briefly pat down the vehicle occupants for weapons to ensure officer safety. *United States v. Sayki*, 160 F.3d 164, 169 (4th Cir. 1998). "[R]easonable suspicion is a particularized and objective basis for suspecting that the person to be frisked is armed and dangerous. *United States v. Powell*, 666 F.3d 180, 185-186 (4th Cir. 2011). A reasonable suspicion search is limited exclusively to patting down the outer clothing of a suspect, looking for items that could be used during an assault. *Sibron v. New York*, 392 U.S. 40, 65 (1968); *see also United States v. Mayo*, 361 F. 3d 802, 805 (4th Cir. 2004). "An officer is not justified in conducting a general exploratory search for evidence under the guise of a stop-and-frisk." *United States v. Swann*, 149 F.3d 271, 274 (4th Cir. 1998).

In this case, actions of CMPD officers exceeded the lawful scope of a Terry Frisk. As officers engaged in the search of Mr. Lyons, they immediately went into his pockets and began pulling items out. At no point was there an attempt to pat down Mr. Lyons' outer clothing before removing items from his pockets and the sling style bag. Moreover, CMPD officers at the scene appeared to characterize their interaction with Mr. Lyons as a search, and because this was a search, they needed more than reasonable suspicion to justify the interaction.

Because CMPD Officers exceeded the permissible scope of a reasonable suspicion search. The search had to be supported by probable cause. There were insufficient facts in this case that

3

could support a finding of probable cause, justifying an arrest, particularized as to Mr. Lyons, that would support a finding of probable cause and justify a search of his person.

Whether probable cause for a search exists is a "practical, common-sense" question, asking whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "The long-prevailing standard of probable cause protects citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime, while giving "fair leeway for enforcing the law in the community's protection." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (cleaned up). A search of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be." *Id*. at 373 (internal citations and quotations omitted).

In reviewing the facts identified by law enforcement before the search of Lyons, there just was not enough. First, the officers noted that the marijuana odor was coming from the car and the green leafy substance found within the vehicle. However, there was no indication that the odor of marijuana was coming from Mr. Lyons. The vehicle belonged to Smith, and it appears that Smith had been consuming impairing substances in or around the time of the traffic stop. The odor of marijuana emanating from the car under these circumstances suggests that Smith had been transporting or was in possession of marijuana, not Mr. Lyons. It was unreasonable to attribute the odor of marijuana to Mr. Lyons.

The same can be said for the green leafy substance found inside the vehicle. Again, officers were aware that the vehicle did not belong to Mr. Lyons. There was no green leafy substance that officers observed on Mr. Lyons' clothing; there was no odor of marijuana coming specifically

from Mr. Lyons. A reasonable law enforcement officer in this case may have thought that there was marijuana in the vehicle. But based on the information that the officers had at the time of the search, it was unreasonable to believe that Mr. Lyons was in possession of narcotics himself.

During their probable cause analysis, officers also considered an image circulated to officers the day before that they contend showed Mr. Lyons engaging in the distribution of narcotics. It is worth noting that at the time the image was circulated, officers did not appear have any idea who the person in the image was. Moreover, the officers had no interaction with the person depicted in the image on December 29, 2024. There was no way to confirm who that person was and whether the person was actually engaged in the distribution of narcotics. On December 30, 2024, when officers stopped Mr. Lyons, they found a person that appeared to be generally dressed like the person in the photographs. However, because there was no confirmation that the person in the image from the transit center was engaged in the distribution of narcotics, it is unreasonable to attribute these images to law enforcement officers' belief that Mr. Lyons was somehow engaged in the transportation and distribution of narcotics.

Probable cause has to be particularized to the person or place to be searched. While there may have been probable cause to search Smith's vehicle in this case, there was not sufficient probable cause to search Mr. Lyons. The law does not recognize the concept of guilt by association and "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). The search of the vehicle may have been reasonable but the search of Mr. Lyons was not.

Therefore, based on the foregoing, Defendant Tiron Lyons respectfully requests this Honorable Court suppress all evidence seized from the search of Tiron Lyons on December 30, 2024.

Respectfully submitted this 6th day of April 2026.

/s/ Lambert Guinn
Lambert Guinn (NC: 39714)
Flannery | Georgalis, LLC
227 W. Trade Street, Suite 950
Charlotte, NC 28202
(704) 420.6881
lguinn@flannerygerogalis.com

*Counsel for Defendant Tiron Lyons*

6

## <u>ARTIFICIAL INTELLIGENCE CERTIFICATION</u>

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexus, FastCase, and Bloomberg. In addition, every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ Lambert Guinn*
Lambert Guinn (NC: 39714)

*Counsel for Defendant Tiron Lyons*

7

# CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2026, the foregoing document was filed with the Western District of North Carolina's Electronic Filing System and will be served electronically on all parties via this system.

/s/ Lambert Guinn
Lambert Guinn (NC: 39714)

*Counsel for Defendant Tiron Lyons*